UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BILLSTEIN, SR., et.al.,                    Case No. 08-13415

               Plaintiffs,                   District Judge Arthur J. Tarnow

v.                                                Magistrate Judge R. Steven Whalen

MARK GOODMAN, et.al.,

               Defendants.

_____ /

## OPINION AND ORDER

Before the Court are Defendants' Motion to Strike Preliminary Expert Report and Testimony of Paul T. Barnes [Doc. #389], and Defendants' Motion to Exclude the Testimony of Alicia Davis [Doc. 391]. For the reasons discussed below, the motion to strike Mr. Barnes' report and testimony [Doc. #389] is DENIED, and the motion to exclude the testimony of Ms. Davis [Doc. #391] is GRANTED.

## I.

The admissibility of Mr. Barnes' and Ms. Davis' testimony is governed by Fed.R.Evid. 702, which provides as follows:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Rule 702, as amended in 2000, codifies the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). *See* Rule 702 advisory committee's notes, 2000 amend. ("In

*Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science."). The admissibility of expert testimony under Rule 702 is addressed to the trial judge's discretion. *Id.*; *Daubert,* 509 U.S. at 594. In *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 528-29 (6th Cir.2008), the Sixth Circuit described the Rule 702/*Daubert* process as follows:

> "Parsing the language of the Rule, it is evident that a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Fed.R.Evid. 702. Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' *Id.* Third, the testimony must be reliable. *Id.* Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based upon 'sufficient facts or data,' whether the testimony is the 'product of reliable principles and methods,' and whether the expert 'has applied the principles and methods reliably to the facts of the case.' *Id.* In addition, *Daubert* provided a non-exclusive checklist for trial courts to consult in evaluating the reliability of expert testimony. These factors include: 'testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community.' *United States v. Langan,* 263 F.3d 613, 621 (6th Cir.2001) (citing *Daubert,* 509 U.S. at 593-94, 113 S.Ct. 2786).

## II.

### A.   Paul Barnes [#389]

Plaintiffs have offered Paul T. Barnes as an expert witness in supply chain management, business operations, and customs and practices in the steel industry. Plaintiffs summarize Mr. Barnes' expertise and the scope of his proposed testimony as follows:

> "Plaintiffs' expert Paul Barnes is a metallurgical engineer with a Masters in Business Administration in Managerial Accounting. His expertise is in business, operations, and supply chain management. Plaintiffs noted on their Expert Witness List that Barnes may offer opinions regarding, *inter*

*alia*, the business relationship between Hercules Drawn Steel ("HDS") and the various Goodman-owned companies that leach profits out of HDS; customs and practices in the steel industry; and damages." *Plaintiffs' Response* [Doc. #427], at 1.

Defendants argue that Mr. Barnes is not properly qualified as a witness, and that his opinions are not based on reliable methodologies. They cite Mr. Barnes' deposition testimony that he has no experience in the cold drawn steel industry or for that matter in the steel industry in general.

Mr. Barnes has a degree and experience in mettalurgical engineering, and an M.B.A. in Managerial Accounting. As shown in his report, he has experience in manufacturing engineering, operations management, sales and marketing, cost estimation, shipping and supply chain management, albeit not specifically in the steel industry.

Notwithstanding their statement that Mr. Barnes will offer testimony concerning "customs and practices in the steel industry," Plaintiffs now concede, or at least clarify, that "Barnes has never been offered as a 'steel industry expert.'" *Plaintiffs' Response*, at 1. Instead, they state that "[h]is opinions and testimony in this case are primarily focused on costing issues, supply chain issues, and business structuring." *Id.* By dint of his education and experience, Mr. Barnes is qualified to offer expert testimony on those issues. That he has no specific experience in the steel industry is not disqualifying. In *Laski v. Bellwood*, 132 F.3d 33 (Table), 1997 WL 764416, *3 (6th Cir. 1997), the district court had "denied the plaintiff full examination of his experts on the issue of injury causation because those witnesses were 'only' medical specialists and not experts in biomechanics or accident reconstruction." The Sixth Circuit, however, soundly rejected the proposition that specialization is a prerequisite to expert testimony:

> "Requiring such specialization thwarts the goals and purposes of the Federal Rules. Our sister circuits have recognized as much. In *DaSilva v.*

-3-

*American Brands, Inc.,* 845 F.2d 356, 361 (1st Cir.1988), for example, the court rejected a suggestion that a mechanical engineer was not qualified to render an opinion on the safety design of a machine because he had no design experience with it. Instead, the court allowed the expert testimony so as not to require, in essence, "that the only experts who could testify regarding a machine are those who have an interest in defending its design." *Id. See also Doe v. Cutter Biological. Inc.,* 971 F.2d 375, 385 (9th Cir.1992) ( "courts impose no requirement that an expert be a specialist in a given field"). More recently, the Third Circuit forcefully held in *Holbrook v. Lykes Bros. S.S. Co., Inc,* 80 F.3d 777, 782 (3d Cir.1996), that a district court abuses its discretion in excluding expert testimony "simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." (Citing *In re Paoli R.R. Yard PCB Litig.,* 916 F.2d 829, 856 (3d Cir.1990))." *Id.* at 3-4.

*Mannino v. International Mfg. Co.*, 650 F.2d 846, 850 (6th Cir. 1981), is a pre-

*Daubert* case, but its words apply with undiminished relevance today:

"If we were to declare as a rule of law that one must actually have practical experience in a given industry in order to qualify as an expert in litigation involving its products, we might very well place an onerous burden on plaintiffs in some cases.  But the key experts of an industry would normally be available to the defendant." (Internal citations and quotation marks omitted).

*Mannino* concluded, "Under the Federal Rules of Evidence, the only thing a court

should be concerned with in determining the qualifications of an expert is whether the

expert's knowledge of the subject matter is such that his opinion will likely assist the trier

of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of

fact." *Id.* at 851.

So too in this case, Mr. Barnes has sufficient education and experience to offer

expert testimony in the areas of operations management, sales and marketing, cost

estimation, shipping, supply chain management and related subjects.  He may not,

however, offer opinions as to customs and practices that are peculiar to the steel industry,

because that is a narrow area in which he does not have relevant experience or training.

As to Defendants' concern about the reliability of Mr. Barnes' methodology, that

-4-

too is better addressed through cross-examination and rebuttal experts. I recognize that Mr. Barnes' testimony is not unimpeachable. However, cautioning against being "overly pessimistic about the capabilities of the jury and of the adversary system generally," the Court in *Daubert* endorsed a flexible standard of admissibility, stating, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*, 509 U.S. at 596.

### B.    Alicia Davis [No. 391]

Ms. Davis is a lawyer who teaches courses in corporations/business law at the University of Michigan. As was the case with Mr. Barnes, Defendants challenge Ms. Davis' qualifications as an expert in corporate governance in the context of this case. They note that notwithstanding her work in academia, she had never read the Michigan Business Corporations Act ("MBCA") prior to being retained as an expert, and had never taught or published articles on the MBCA. The courses she teaches center on Delaware law and the Model Corporations Act, not Michigan law. They argue that her experience in the private sector was limited to entry-level positions at a law firm and some brokerage houses.

However, it is not necessary to determine whether Ms. Davis is unqualified as a witness or whether, like Mr. Barnes, her alleged deficiencies go more to the weight of her testimony rather than its admissibility. Even assuming that she is otherwise qualified, her opinions are not relevant, and would be unhelpful in assisting the jury in understanding issues that are relevant to this case. Instead, her testimony would have the opposite effect, that is, it would tend to confuse the jurors and negatively impact their understanding and application of the relevant legal concepts as set forth in jury instructions.

At her deposition, Ms. Davis testified that her opinion is "now limited to only best practices, and it's not my job to say what the Michigan law says about particular issues." She added that "nothing in my report relates to the conduct of the Defendants here." *Davis Deposition*, 73-74. While she opined that "fiduciaries should follow the ALI's model and disclose potential corporate opportunities in advance," she conceded that "best practice" is not the legal standard in Michigan, and that she had no opinion as to the appropriateness of Defendants actions. *Id.*, 57, 63. She also stated that best practices "are often higher than the standard of liability." *Id.*, 63.

The problem with Ms. Davis' testimony is that she really does nothing more than state her opinion as to what the law should be. It should "follow the ALI's model." But that is not the law in Michigan, as she readily concedes.  The Defendants' liability will be assessed under Michigan law, and Ms. Davis' testimony is not consistent with the Michigan law on which the jury will be instructed. This can have no effect other than to confuse the jury as to the standards they are to apply.

The Plaintiff argues that Ms. Davis "is not testifying about standards of liability," but rather

> "about corporate governance practice and the practical options available to corporate fiduciaries in this context, as well as the type of conduct which can foster a fair process in a conflict of interest transactions. Professor Davis will walk the jury, as she does her students, down the avenues which fiduciaries have available to them to comply with their obligations to their corporation. Then, having an understanding of the options available to Defendants, *the jury, or the judge, and not Professor Davis, can decide whether Defendants breached their duties to the corporation*." Plaintiffs' Response [Doc. #422], at 1-2. (Emphasis added).

Yet the standard by which the jury will determine whether Defendants breached a legal duty is a function of *Michigan* law, not theoretical best practices. In effect, Plaintiffs' argument is a tautology: "Ms. Davis is not testifying about the standards of

liability; she is testifying about the standards by which the jury or the judge can determine whether Defendants breached a legal duty."

Expert testimony must be able to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Cook v. American Steamship Co.,* 53 F.3d 733, 738 (6th Cir.1995). Determining whether the testimony meets that requirement is a question of relevance. *Id.* On the other hand, testimony touching on the standards for determining whether or not the Defendants breached a legal duty is a question of law that is "within the *sole* competence of the court." *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996) (emphasis in original). Ms. Davis' testimony must be excluded because it is irrelevant, because it invades the sole province of the Court, and because the potential for confusion, misdirection and unfair prejudice to the Defendants greatly outweighs any arguable relevance it might have. *See* Fed.R.Ev. 403.

### III.   CONCLUSION

For the reasons and under the terms set forth above, Defendants' Motion to Strike Preliminary Expert Report and Testimony of Paul T. Barnes [Doc. #389] is DENIED.

Defendants' Motion to Exclude the Testimony of Alicia Davis [Doc. 391] is GRANTED.

IT IS SO ORDERED.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: March 28, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on March 28, 2012.

<div style="margin-left:45%">
s/Johnetta M. Curry-Williams
Case Manager
</div>